## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### JOHNSON & GROMMET BROS. V. BUNN & MONTEIRO.

November 21, 1912.

Absent, Cardwell, J.

1. CONTRACTS—*Engineer's Estimates—Prerequisites to Action—Refusal to Give Estimates.*—Although a contract for the construction of a railroad provides that the certificate of the chief engineer of the railroad company as to the completion of the work, according to the contract, and his final estimate of the work done by the contractors under the contract, shall constitute a condition precedent to any right of action by the contractors against the railroad company, yet where it appears that a final estimate was demanded of the chief engineer of the railroad company and was not furnished, and that his refusal, under all the circumstances, was arbitrary and unreasonable, and arose from no fault on the part of the contractors, the contractors may maintain a suit on the contract without having first procured from the engineer the certificate and final estimate called for by the contract.

Appeal from a decree of the Circuit Court of Wise county. Decree for the complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Irvine & Morison,* for the appellants.

*W. S. Mathews,* for the appellees.

KEITH, P., delivered the opinion of the court.

Bunn & Monteiro filed their bill in the Circuit Court of

Wise county, alleging that the Keokee Coal and Coke Company had entered into a contract with the Black Mountain Railroad Company to construct its roadbed from a point at Imboden, in Wise county, to a point in Lee county, near Keokee; that the Keokee Coal and Coke Company entered into a sub-contract with Willard Johnston and G. J. and W. J. Grommet, partners trading under the firm name and style of Johnston & Grommet Brothers, for the construction of said roadbed, which they had under contract from the Black Mountain Railroad Company; that Johnston & Grommet Brothers sub-let a portion of said roadbed to Bunn & Monteiro, between stations 834 and 856, at seventy cents per cubic yard for solid rock, thirty-five cents per cubic yard for loose rock, and twenty-three cents per cubic yard for earth; that Bunn & Monteiro completed that portion of the work for which they contracted about the first day of June, 1907, and that Johnston & Grommet Brothers on that day owed them the sum of $2,203.21, which they failed and refused to pay; whereupon Bunn & Monteiro, on the 20th day of July, 1907, filed their mechanic's lien in the clerk's office of Wise county, claiming a lien on the Black Mountain Railroad and franchise between the stations mentioned to secure the payment of said sum.

It appears, therefore, that Bunn & Monteiro were sub-contractors under Johnston & Grommet Brothers. By the terms of the contract between the Keokee Coal and Coke Company and Johnston & Grommet Brothers, it is provided, among other things, that "Whenever, in the opinion of the chief engineer of the Keokee Coal and Coke Company, this contract and all things herein agreed to be done by contractors shall have been completely performed and finished, according to the provisions thereof and within the limited time, said chief engineer of the railway company shall make and return a final estimate of the work

done by contractors under this contract, and shall certify the same in writing under his hand, the Keokee Coal and Coke Company shall, within thirty days after the completion of the work aforesaid and the return of said final estimate, pay to the contractors the full amount so far to be due them and remaining unpaid, including the percentage retained in former estimate as aforesaid, except as in this contract is otherwise provided. The procuring of such certificate and final estimate shall constitute a condition precedent to any right of action by contractors against the Keokee Coal and Coke Company."

In that suit such proceedings were had that a decree was entered which ascertained that there was due the plaintiffs, Bunn & Monteiro, by Johnston & Grommet Brothers the sum of $2,203.21, with interest thereon from the 1st day of June, 1907, till paid, subject to a credit of $522.15 as of October 31, 1907. From this decree Johnston & Grommet Brothers appealed, and this court reversed the decree of the circuit court, holding that "when a contract provides that the engineer in charge of work shall certify in writing its final completion, together with a final estimate showing the balance due, and that the procuring of such certificate and final estimate shall constitute a condition precedent to any right of action by the contractor against the owner, a suit by the contractor to recover a balance claimed to be due under the contract without notice to such engineer that the work has been completed and without any request for such certificate and estimate, is premature. The suit cannot be maintained when based upon estimates of engineers who are strangers to the transaction. If the conduct of the engineer designated by the contract is fraudulent, or he has been guilty of a mistake so gross as to amount to a fraud on the rights of the opposite party, the latter is not bound by his estimates, but may maintain an action on the contract to re-

cover the amount due, but where no such conditions exist the parties are bound by the terms of their contract." *Johnston* v. *Bunn*, 108 Va. 490, 62 S. E. 341, 19 L. R. A. (N. S.) 1064.

The case having been remanded to the circuit court, it was referred to a commissioner in chancery, who returned a report in favor of the plaintiffs for $1,396, with interest from the first day of June, 1907, and the circuit court rendered a decree in favor of the plaintiffs for that amount, which has been brought by appeal to this court for review.

The contention of appellants is that the appellees have failed to establish their claim by a preponderance of evidence.

The commissioner reports, among other things, that "nowhere in the record appears the final estimate of the chief engineer of the Black Mountain Railway Company of the quantity and classification of material moved between stations 834 and 856. The estimate of Henry J. Oewel is based on records found by him in the office of the railroad company. The estimate of E. S. Fraser, as given in evidence, is made from a portion of the records of that work in his possession on the date he gave his deposition. A. N. Bullitt, chief engineer of the Keokee Coal and Coke Compnay, testified that he had received the final estimate from Mr. Fraser, and that his own estimate was identical with Mr. Fraser's. There is a discrepancy between the figures given by Mr. Oewel and Mr. Fraser, but it is assumed, for the purpose of this report, that the estimate of the latter represents substantially the 'final estimate' as rendered by Mr. Fraser to the Keokee Coal and Coke Company. All three estimates are based upon the original calculations and measurements made by Mr. Fraser and those on the ground representing him.

"The estimates of H. E. Fox and Malcolm Smith were made from independent surveys and measurements. They

15

differ, to some extent, both as to classifications and measurements of material removed by the plaintiffs, but are in substance similar when compared with the estimate as given by the railway company. Without imputing bad faith to any of the engineers representing the railroad company, your commissioner submits that a discrepancy in measurement resulting in a difference in the case of the highest priced material of over 1,000 cubic yards, and in the amount to be paid for the work of $1,000 or more, in a contract of this size, is an indication of a mistake so great as to work a hardship upon the parties suffering thereby.

"The final estimate of this work, under the contract between the parties, was to be made by Mr. Fraser, chief engineer of the Black Mountain Railway Company. The resident engineer of the company, under Mr. Fraser, under whose immediate supervision the work was done, was a Mr. Seahorn. Mr. Seahorn's evidence is not in the record. From the deposition of Mr. George Morton, however, and other testimony, some of which may be hearsay and incompetent, your commissioner is convinced that Mr. Seahorn was informed of errors in the figures on which Mr. Fraser based his estimate of the work done by the plaintiffs. Although the evidence may not fix the identical point at which the errors occurred, your commissioner believes that it establishes their existence clearly and convincingly, and ascertains their character and size. Your commissioner is, therefore, of the opinion that the estimate of the chief engineer was erroneous and, to an extent, that its ascertainment of the quantity and character of the excavation made by Bunn & Monteiro between stations 834 and 856 of the railroad in question would operate as a fraud upon the rights of the said Bunn & Monteiro.

"In ascertaining the correct amount due by the defendants, Johnston & Grommet Brothers, to the plaintiffs, Bunn & Monteiro, your commissioner, therefore, disre-

gards the estimate of E. S. Fraser. As to which of the estimates made by the engineers employed by the plaintiffs should be adopted, your commissioner has been undecided. Malcolm Smith, however, had the advantage of the infor· mation acquired by the different engineers making previous surveys of the work, and was thus in position to get the most accurate results in his work. Your commissioner, therefore, reports his estimate of the work done as the basis for calculating the amount due Bunn & Monteiro."

The principal exceptions to the report of the commissioner are, first, "that the complainants have failed to establish, by a preponderance of the evidence, the facts as alleged in their bill; second, that said special commissioner arbitrarily selected the report of Engineer Malcolm Smith as a basis for his report, disregarding all other evidence in this cause which was in conflict therewith."

We think that the report of the commissioner answers both of these propositions. It shows that he has carefully weighed and considered all of the evidence, and that his reliance upon Engineer Smith was not arbitrary, but that his testimony was relied upon by the commissioner for sufficient and intelligent reasons, which are set out in the extract which we have given from his report.

The law of the case is correctly stated in *Johnston* v. *Bunn, supra,* and in the still more recent case of *Cornell* v. *Steele,* 109 Va. 589, 64 S. E. 1038, 132 Am. St. Rep. 931, referred to in the report of the commissioner.

The case, as we have seen, was reversed in this court because the contract provided that the engineer in charge should certify in writing the final completion of the work, together with his estimate showing the balance due, and that the procuring of such certificate and final estimate should constitute a condition precedent to any right of action by the contractor against the owner, and that, therefore, the suit was premature. It appears from the evi-

dence now in the record that a final estimate was demanded of the engineer in charge, and that no final estimate was ever given by him. We are of opinion that there is no sufficient reason shown for the refusal, upon the part of the engineer in charge, to make a final estimate of the work, and his refusal, under all the circumstances, was arbitrary and unreasonable and arose from no default on the part of the appellees; from which it results that we are of opinion that, under the facts of this case as now disclosed, the appellees could maintain their suit without having first procured a certificate from the engineer in charge, **certifying in writing** the final completion of their contract and a final estimate showing the balance due.

Upon the whole case we are of opinion that there is no error in the decree of the circuit court, which is affirmed.

*Affirmed.*