# Richmond

## NEWTON, SURVIVING EXECUTOR V. WHITE.

### January 15, 1914.

### Absent, Cardwell, J.

1. ASSIGNMENTS—*Partial Assignment—Deed of Trust—How action Brought.*—A deed of trust on a chose in action is an assignment *pro tanto* of the chose, and an action thereon in the name of the assignor for the benefit of himself and the creditor secured is properly brought.

2. CONTRACTS—*Consideration—Promise—Landlord and Tenant.*—If a lessee contracts to erect buildings on the leased premises, and the lessor covenants that he will at the end of the lease take the buildings so to be erected at a fair valuation, this constitutes a promise by the lessor, supportd by a valuable consideration, to pay the lessee for such buildings.

3. LANDLORD AND TENANT—*Building by Lessee—Lessor to Take at Valuation—How Value to Be Ascertained in Case at Bar.*—If a lessee covenants to erect buildings on the leased premises to cost not less than $2,000 nor more than $3,000, and the. lessor covenants that at the termination of the lease he will take the buildings so to be erected at a fair valuation to be ascertained by considering what it would cost to erect them at the time of such valuation and deducting therefrom a reasonable allowance for the wear and tear thereof, this does not require the appraisers to start with a maximum valuation of $3,000 for the building and deduct therefrom the reasonable wear and tear, but the appraisers are to take the estimated costs at the time of valuation, whatever that may be, and deduct therefrom the reasonable wear and tear, and the balance to an amount not exceeding $3,000 is what the lessor is to pay. That is the utmost extent of his liability, although, at a fair valuation, the building may be worth much more, but the limitation was not designed, nor has it the effect, to prevent the recovery by the lessee of the fair value of the buildings at the time of their surrender to the lessor, provided such value is not in excess of $3,000.

4. LANDLORD AND TENANT—*Tenant From Year to Year—Covenants of Grantor—Continuation.*—Where property is leased for a fixed and definite term and the lessor agrees to take at valuation, at the end of that term, buildings to be erected on the leased premises by the lessee, and the tenant is permitted to hold over from year to year for six years without any new contract, express or implied, this carries with it a continuation of the lessor's promise to pay for the buildings at the termination of· the relation of landlord and tenant. The law presumes the holding to be upon the terms of the original lease, subject to the same rent and to the covenants of the original lease, so far as applicable to the new condition of things.

5. APPEAL AND ERROR—*Harmless Error—Irrelevant Evidence—Cost.*— The fact that the reading of a will in evidence was unnecessary and entailed a useless expense does not constitute reversible error.

6. APPEAL AND ERROR—*Case Heard by Trial Court—Evidence Sufficient to Support Judgment.*—Where the whole matter of law and fact is submitted to the trial court, without the intervention of a jury, its judgment will not be set aside where the evidence, considered as on a demurrer to the evidence, is sufficient to support the judgment.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert W. Tomlin,* and *William G. Maupin,* for the plaintiff in error.

*J. Sidney Smith,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

George Newton, the defendant's testator, in October, 1895, made a lease to Ira B. White and William P. Dodson doing business as White & Dodson, for a certain lot of land

in Norfolk city, the said lease being for the term of eleven years, beginning on the 10th of October, 1895, and expiring on the 9th of October, 1906. By this lease the lessees covenanted to erect and maintain on the demised premises a brick building, which should cost not less than $2,000 and not more than $3,000. George Newton covenanted for himself and his assigns with the lessees and their assigns that he would at the termination of the lease take the building so to be erected at a fair valuation, which valuation, if the lessor and lessees could not agree thereon, was to be determined by two valuers and an umpire to be selected as follows: At least sixty days before the termination of the lease the lessor and the lessees were each to select a valuer, who should be a master builder, and each was to give notice to the other party of the valuer so chosen. The two valuers thus selected were required to select an umpire, to be also a master builder, who should decide between them in the event of their failing to agree upon the value of the building. The valuers so chosen, or in case of their disagreement the umpire, were directed to reach their valuation as follows: They should consider what would be the cost at the time of their valuation of erecting the building, and then deduct from such cost a reasonable allowance for the wear and tear thereof since its erection and at the time of such valuation. They were forbidden to estimate or consider the value or eligibility of the location of the said building, or to be influenced by any sales thereof at any time, and their valuation was limited and confined exclusively to the building without any regard to the lot of land on which it stood or its eligibility. It was further provided that if either party or their assigns should fail within five days after notice of the appointment of a valuer by the other party to appoint a valuer and notify such other party of such appointment, then the other party who had made such appointment, or his assigns, might select

and appoint a valuer for the party so failing to make such appointment, and give notice thereof. In this event the two valuers should select an umpire, being also a master builder, and they should estimate, fix and determine the value of the building in the same manner and under the same restrictions as above set forth. The lessor bound himself, his heirs and assigns, to pay to the lessees at or before the expiration of the term of the lease the amount of money which said valuers or umpire, should they disagree, had determined on as the amount to be paid for said building.

The lessees entered upon the demised lot, erected a building costing something less than $3,000, and remained in possession thereof until the 10th day of May, 1907, when William P. Dodson, one of the lessees, by deed of that date, conveyed to the other partner, Ira B. White, all of his interest in said lease. By deed of trust of May 10, 1907, Ira B. White assigned and conveyed to R. M. Hughes, Jr., trustee, all of his interest in said lease to secure Lallah L. Batten a debt of $1,700, which debt has never been paid and which deed of trust has never been released.

The lease above described expired by limitation at midnight on the 9th day of October, 1906. No new lease was made between the parties and no new contract, express or implied, was entered into by them regarding the leased premises or the building theron, but the original lessees simply held over for one year, paying rent and discharging other obligations imposed by the lease, and thereafter one of them, White, continued to hold under similar circumstances until the 10th day of October, 1912. On this last named date the lease was terminated, White having given three months' notice of his intention to terminate to Newton, surviving executor of George Newton. More than sixty days before October 10, 1912, White gave notice to Newton, surviving executor, of the appointment of a valuer chosen by White to estimate the value of the building in

accordance with the terms of the lease, and calling upon Newton also to appoint a valuer. Newton declining to make any appointment, White appointed one for Newton. The two valuers thus named by White met, and on the 6th day of September, 1912, estimated that the building would cost on that date to erect the sum of $3,680. From this they deducted for wear and tear the sum of $700, thus making the value of the building on September 6, 1912, the sum of $2,980. Having given no notice to Newton of the date and place of their meeting, the valuers on October 21, 1912, served a written notice upon Newton that they had appointed Jesse Johnson as an umpire, and that they would meet with Johnson on October 26, 1912, at one o'clock p. m., at a certain designated point. They accordingly met again on said date and reaffirmed their valuation of September 6, 1912. This action, claiming $2,980, based upon this valuation, was instituted on the 30th day of October, 1912, four days after the last meeting of the alleged valuers and umpire.

The declaration, which is in assumpsit, contains the general counts in assumpsit and two special counts. These special counts were demurred to, and the demurrer to the second was sustained. The parties went to trial upon the general counts and the first special count, and a judgment was recovered against the defendant for the whole amount claimed, $2,980, and to that judgment a writ of error was awarded to Newton's executor.

The first error assigned is that the demurrer to the first special count should have been sustained.

The first special count sets out substantially the facts already stated and files as exhibits the several deeds and leases from George Newton and his wife to Ira B. White and William J. Dodson, from Dodson to White, and from White to Hughes, trustee.

The grounds of demurrer to the first special count are:

"(1) That the said count and the papers referred to therein, and therein termed exhibits, show that the plaintiff has no right to bring this action.

"(2) That the said count states no consideration for any promise of the said defendant.

"(3) That the said count alleges no promise of the said defendant nor any breach thereof.

"(5) That the said count and the paper therein referred to as Exhibit 'A,' show that George Newton made no contract whereby he could become liable to pay the $2,980 claimed in said count.

"(6) That the said count does not contain the averments which the laws of pleading require in regard to such contracts as the alleged lease, upon which said count is based.

"(7) That by reason of the vagueness of the statements made in said count and the omissions of statements which should be made, said count does not fulfil the requirements of the laws of pleadings."

The sixth and seventh grounds of demurrer may be disregarded. They are no more than an assertion that the declaration is not sufficient in law.

Coming to the more specific grounds of demurrer, we are of opinion that they are not well taken. The first ground rests upon the proposition that the original lease was made to White & Dodson, and that the right of action was originally in them. Dodson, however, having transferred his interest in the lease by deed to White, executed long before the institution of this suit, White sufficiently appears as the person solely interested in the covenant upon which the suit is brought, up to the time that he executed the deed of trust upon his lease to Robert M. Hughes, Jr., to secure a debt to Lallah L. Batten. The effect of that deed was to create a lien upon the house erected upon the leased premises in favor of Lallah L.

Batten, the beneficiary, and constituted a partial assign-
ment of the claim against the lessor defendant. But for
that assignment or the lien thus created, Ira B. White
would have been the sole beneficiary and claimant for the
value of the house erected upon the leased premises, and
in him would have been the sole right to institute an action
to recover its value. The deed from Ira B. White to
Hughes may be regarded as a complete assignment of a
chose in action, vesting in Hughes a right to institute suit
for its recovery. If that had been done and the $2,980
had been recovered, it is obvious that the recovery should
have been for the benefit of Lallah L. Batten to the ex-
tent of her interest, and as to the residue it would have
been for the benefit of Ira B. White, who owned it, subject
only to the Batten lien. Instead of pursuing this course,
the suit was brought by White, suing on behalf of him-
self and Lallah L. Batten, which seems to reach the same
result and to violate no rule of law.

Speaking of partial assignments, Burks on Pleading, at
page 56, says: "While the owner of a non-negotiable chose
in action is permitted to assign it, the assignment must be
of the whole debt. He cannot split up his demand and
assign a portion of it to one person and another portion
to another so as to enable them to maintain separate ac-
tions for their different portions. If partial assignments
have been made, the action must be in the name of the
assignor. A single cause of action arising on an entire
contract cannot be divided by partial assignments so as
to enable each assignee to sue for the part assigned."
Citing *Phillips* v. *Portsmouth,* 112 Va. 164, 70 S. E. 502.

The second ground of error is not well taken. By the
lease the lessees covenant to erect and maintain on the
demised premises a brick building which should cost not
less than $2,000 nor more than $3,000; and George New-
ton covenanted for himself and his assigns that he would

at the termination of the lease take the building so to be erected at a fair valuation, which valuation, if the lessor and lessees could not agree thereon, was to be determined in a mode prescribed by the lease. And the same provision which we have above extracted from the lease disposes of the third ground of demurrer, which is that the special count alleges no promise of defendant, nor any breach thereof.

The fifth ground of demurrer is thus stated in the petition for a writ of error: "That George Newton's estate could not under any circumstances be liable for as much as $2,980, and for proof of this the court is simply referred to the lease filed with the declaration. That lease limited Newton's possible maximum liability by requiring appraisers to start with a valuation not in excess of $3,000, and from that to deduct wear and tear, etc., for eleven years, whereas the declaration and the papers filed with it show that the appraisers started with a building supposed to cost $3,680, and after making deductions for seventeen years have found the Newton estate liable for $2,980, only $20 less than the maximum original cost of the building."

The provision of the lease upon this point is as follows: "And the said George Newton for himself, his heirs and assigns, covenants with the said parties of the second part and their assigns that he will at the termination of this lease take the buildings to be erected by the lessees on said premises at a fair valuation, which said valuation if the said lessor and lessees cannot agree thereon is to be determined by two valuers and an umpire . . . and that the valuers so chosen or the umpire in case of their disagreement shall consider what would be the cost at the time of such valuation of erecting the said building and then deduct from such cost a reasonable allowance for the wear and tear thereof, since its erection and at

the time of such valuation, and that they shall not estimate or consider the value or eligibility of the location of the said building or be influenced by any sales thereof at any time, and that the said valuation shall be limited and confined exclusively to the buildings aforesaid, without any regard to the lot or its eligibility. . ."

The valuers under that provision would ascertain what would be, the cost at the time of such valuation of erecting the building, and deduct from it a reasonable allowance for wear and tear since its erection, the object being to ascertain the fair value of the building at the time it was turned over by the lessee to the lessor. It is true that the valuation was limited to not more than $3,000, and there could be no recovery for a greater sum than that, a limit imposed, of course, in the interest of the lessor. That was the utmost extent of his liability, although at a fair valuation the building might have been worth more, but the limitation was not designed, nor has it the effect, to prevent the recovery by the lessee of the fair value of the building at the time of its return to the lessor, provided such value was not in excess of $3,000.

The last objection we will notice to the declaration is that Newton did not obligate himself or his estate to pay for any building on the leased premises after the expiration of the lease, which was October 10, 1906.

After the expiration of the original term of eleven years the lessee was permitted to hold over, and thereby extended the lease from year to year, and this condition of things continued for six years and carried with it a continuation of Newton's promise to pay for the building at the termination of the relation of landlord and tenant.

In *Hobday* v. *Kane,* 114 Va. 398, 76 S. E. 902, it is said: "Where the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the orig-

inal demise, subject to the same rent and to the covenants of the original lease, so far at least as these are applicable to the new condition of things." Citing Taylor on Landlord and Tenant, section 525.

We know of no reason why that principle should not apply to the case before us.

We think that the demurrer was properly overruled.

During the progress of the trial objections were taken to rulings of the court upon the admission of testimony, the first of which was to the introduction of the original lease, on the ground that it showed upon its face that George Newton made no promise to pay anything for a building the value of which was to be ascertained at any time after the 10th day of October, 1906. We have sufficiently disposed of this in what was said upon the demurrer. The lessee having held over by permission of the lessor, the holding was presumed to be upon the terms of of the original demise. *Hobday* v. *Kane, supra.*

The second bill of exceptions was taken to the action of the court in permitting the will of George Newton to be read in evidence, as it was unnecessary and entailed a useless expense—which, if admitted to be true, does not constitute reversible error.

The third, fourth and fifth bills of exceptions present objections which are wholly insufficient to constitute reversible error, if error there were in the rulings made by the court, and need not be further noticed.

While it is not mentioned in the grounds of demurrer, and need not therefore have been considered, it is stated in the petition for a writ of error that the valuers gave no notice to Newton of the date and place of their meeting. In this the petition is plainly in error, as the record shows that the defendant in error, White, on the 21st of October, 1912, wrote to the executor as follows:

"This is to notify you that I hereby reaffirm the ap-

pointment heretofore made by me of Messrs. Harvey Abrams and Jesse Johnson, as valuers, to appraise the warehouse on Newton's Lane, which was leased by George Newton and wife to White and Dodson, by lease duly of record." Signed "Ira B. White."

On the back of this letter appears the following: "Executed in the city of Norfolk this 22d day of October, 1912, by serving copy hereof on William Loyall Newton, executor of George Newton, deceased. J. F. Lawler, Segt., by C. L. Quinn, deputy."

And on the same day the executor was notified by the valuers that they were to "consider the matter of appraisement of the building at the office of Jesse Johnson, in the Law Building, Granby street, in the city of Norfolk, Virginia, on Saturday, October 26, 1912, at 1 o'clock P. M." Signed "Harvey Abrams, Jesse Johnson." And on the back of this paper appears the following: "Executed in the city of Norfolk this 22nd day of October, 1912, by serving a copy hereof on William Loyall Newton, sole surviving executor of George Newton, deceased. J. F. Lawler, Segt., by C. L. Quinn, deputy."

The seventh ground of exception is to the action of the court in overruling the motion of the defendant for a new trial, on the ground that the verdict was contrary to the law and the evidence.

The whole matter of law and fact was submitted to the court without a jury, and upon the evidence submitted to the court, considered as upon a demurrer to the evidence, there can be no question that it was amply sufficient to support the judgment.

We are, therefore, of opinion that there was no error in the judgment complained of, which is affirmed.

*Affirmed.*