# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RICHMOND COLLEGE V. SCOTT-NUCKOLS CO., INC.

### January 16, 1919.

### Absent, Sims, J.

1. CONTRACTS—*Working Contracts—Independent or Dependent Contracts—Case at Bar.*—In an action by a contractor against a college for a balance due for material and labor done in the construction of water and sewer lines upon the college property, there were three separate contracts. While all of the work was done in the construction of such sewer and water system, the contracts were let at separate times, under different specifications and upon competitive bidding. They might just as well have been entered into with three separate contractors as with one, and no reference is made in either one of the contracts to either of the others. They were, therefore, clearly independent and not interdependent agreements.

2. DEMURRER—*General Demurrer—Specification of Grounds—Case at Bar.*—In an action of assumpsit brought by a contractor upon two contracts for work done in installing a water and sewer system on defendant's land, the original declaration contained the common counts in assumpsit. The particulars of the claim and the amended declaration showed that the contractor was claiming a balance of $238.29 for work done under contract No. 1 ($8,050.61 having been paid thereon); $1,139.46 under contract No. 3 ($1,000 having been paid thereon), and $10 for sand and stone furnished. There was a general demurrer to the declaration and to each count thereof, which for specification stated, "that the several matters and things set out in the contracts made a part of said amended declaration and shown to be conditions precedent to a right of action and recovery, are not alleged or averred in such manner as to give plaintiff the right to sue, nor are such other matters alleged as legally excuse the failure to allege and aver such conditions precedent."

   *Held:* That this specification was no more than an assertion that the declaration was insufficient in law.

3. DEMURRER—*Stating Grounds of Demurrer—Section 3271 of the Code of 1904.*—The rule which applies under section 3271 of the Code of 1904 in cases where the plaintiff moves the court

to require the defendant to state the grounds of demurrer, requires that they shall be stated specifically, and that no ground shall be considered other than those so stated.

4. Working Cotracts—*Declaration—Sufficiency.*—Where the declaration of a contractor suing for a balance due on work done by him, sufficiently advised the defendant of the nature of the contractor's claim, and although it did not in specific terms charge fraud or bad faith on the part of the architects who were required by the working contracts and specifications to approve the work, did so in substance, the declaration is sufficient under section 3272 of the Code of 1904.

5. Working Contracts—*Architect's Certificate—Excuse for Failure to Produce.*—Actual fraud is not the only excuse which may be shown for failure of the contractor to produce the architect's certificate, and it is well recognized that such a certificate is not necessary if it is capriciously or arbitrarily withheld. If the refusal of the certificate is based upon false or fraudulent information, failure to produce it does not bar a recovery.

6. Amendments—*Acts 1914, p. 641—Whether Mandatory or Directory.*—The act of March 27, 1914 (Acts 1914, p. 641), providing that the trial court "may" at any time permit any proceeding or pleading to be amended, is not mandatory but permissive. The trial courts must always permit amendments in furtherance of justice, and upon refusal to do so such action may be reviewed by the Supreme Court of Appeals; but such amendments are not matters of right, and should not be permitted to delay, impede or embarrass the administration of justice.

7. Amendments—*Acts 1914, p. 641—Whether Mandatory or Directory—Plea of Set-Off.*—In an action by a contractor for a balance due for work and labor done, defendant filed a special plea of set-off claiming damages for defective work done. After all the evidence in chief had been introduced on both sides, and during the examination of the witnesses put on by the plaintiff in rebuttal, the defendant moved for leave to amend its special plea of set-off by inserting an averment of the plaintiff's insolvency, and that plaintiff violated the contracts by doing its work under them in an unworkmanlike manner, and that plaintiff covered up and concealed from view such defective and faulty work, whereby defendant was misled.

*Held:* That the court correctly exercised its discretion in refusing to allow the plea to be amended at that time.

8. Set-Off, Recoupment and Counterclaim—*Subject Matter of Set-Off.*—Under section 3299, Code of 1904, defendant cannot avail himself of a plea of set-off and counterclaim unless such claim grows out of the contract sued on. Accordingly, in the

instant case, it was held that where plaintiff, a contractor, sued defendant for a balance due for work done under two contracts, defendant could not set-off damages suffered by it under an independent contract with plaintiff, which had been fully and completely performed.

9. WORKING CONTRACTS—*Inspection by Engineer—Assistants of Engineer—Case at Bar.*—Where a contract for installing a water and sewer system provided that the engineers of the property owners should be the sole arbitrators to decide all questions and disputes, while it is true that the engineers, upon final arbitration, could only act in person, yet it is not true that the engineers could not employ expert assistants to superintend and direct the construction in accordance with the contracts. Such work requires constant supervision and inspection during its progress, for it is soon concealed so as to make proper inspection thereafter impossible. There is no other practical method. And even if the contract did not warrant inspection and supervision by an assistant of the engineers, acquiescence by the landowner in such action of the assistant would amount to a waiver of its right to require the engineers' personal inspection and supervision.

10. APPEAL AND ERROR—*Reversal—Verdict Contrary to the Law and the Evidence.*—Although the Supreme Court of Appeals may have grave and reasonable doubts as to whether the jury have correctly interpreted conflicting parol evidence, this in a civil case is insufficient to justify a reversal on the ground that the verdict is contrary to the law and the evidence. In order to justify, a reversal on that ground, the verdict must be plainly against the evidence, or without evidence to support it.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*A. W. Patterson* for the plaintiff in error.

*O'Flaherty, Fulton & Bryd,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

Richmond College, hereinafter called the defendant, complains of a verdict and judgment in favor of Scott-Nuckols Co., Incorporated, hereinafter called the contractor, for the balance claimed to be due for material and labor done in the construction of water and sewer lines laid under certain written contracts.

[1] There were three separate contracts. Contract No. 1 was dated March 6, 1914, and contract No. 3 September 15, 1914. There was another contract, generally referred to in the record as contract No. 2, which was dated July 13, 1914. One point of controversy arises out of the fact that although the action was based upon balances claimed to be due on contracts Nos. 1 and 3, the defendant filed a special plea of set-off and recoupment and claimed that the three contracts were dependent each upon the other, and that it had the right to set-off and recover for damages arising out of alleged defects in the construction done under contract No. 2 as well as for such alleged defective work done under the other two contracts. The construction under contract No. 2 had been completed, inspected, approved, and the whole work done thereunder paid for in full by the defendant before this suit was instituted, and the action, as above stated, is based upon balances claimed to be due under the other two contracts.

While all of the work was done in the construction of a sewer and water system upon the property of the defendant at Westhampton, the contracts were let at separate times, under different specifications and upon competitive bidding. They might just as well have been entered into with three separate contractors as with one, and no reference is made in either one of the contracts to either of the others. They were, therefore, clearly independent and not interdependent agreements. All that is hereafter said must be read in view of this conclusion, which was contested by the defendant in several different methods before the trial court as well as here.

The specifications which constitute a part of contract No. 1 provide, among other things, that "The premises shall at all times be under charge and jurisdiction of the engineer, and he or his properly accredited agents or representatives shall have free and unobstructed access to the premises at all times, and the contractor shall provide adequate and safe means for the inspection of his work at any and all times." They further provide that "the term 'engineer' shall mean a properly appointed member of the firm of Corneal & Johnson, or his successor duly appointed by the owners, or the assistants and duly authorized agents of the engineer." As to payments, this is said: "Payments will be made as the work progresses, upon the certificate of the engineer that the work has been satisfactorily performed. Basis of payment to be eighty-five per cent. of the work satisfactorily performed, the remaining fifteen per cent. to be included in the final payment for the entire work which shall be. due and made within thirty days after the acceptance and approval of the work as a whole by the engineer and superintendent and the owners."

There was, as is usual in such controversies, a sharp conflict in the evidence, which we shall not review, because by the mandate of the statute, under the demurrer to the evidence rule, the defendant is here admitting the truth of all of the contractor's evidence and all proper inferences therefrom which conflict with its own evidence.

[2, 3] 1. The first assignment of error is that the court erred in overruling the demurrer to the declaration. The original declaration contains the common counts in assumpsit. The particulars of the claim and the amended declaration show that the contractor was claiming a balance of $238.29 for work done under contract No. 1 ($8,050.61 having been paid thereon), $1,139.46 under contract No. 3 ($1,000 having been paid thereon), and $10 for sand and

43

stone furnished.   The demurrer was a general demurrer to the declaration and to each count thereof, and for specification states, "that the several matters and things set out in the contracts made a part of said amended declaration and shown to be conditions precedent to a right of action and recovery, are not alleged or averred in such manner as to give plaintiff the right to sue, nor are such other matters alleged as legally excuse the failure to allege and aver such conditions precedent."

It is only necessary to say, as to this specification, what was said as to the sixth and seventh grounds of demurrer in the case of *Newton* v. *White*, 115 Va. 849. 80 S. E. 561, and that is that it is no more than an assertion that the declaration is insufficient in law.   The rule which would apply under section 3271 in cases where the plaintiff moves the court to require the defendant to state the grounds of demurrer, requires that they shall be stated specifically, and that no ground shall be considered other than those so stated. *Va. & S. W. Ry. Co.* v. *Hollingsworth,* 107 Va. 364, 58 S. E. 572. The demurrer was submitted without argument, and the defendant did not present to the lower court, either in its demurrer or in argument, the specific ground here relied upon.   It was properly overruled, because under section 3272 of the Code, "no defect or imperfection in the declaration, whether it has heretofore been deemed mispleading or insufficient pleading or not, shall be regarded unless there shall be omitted something so essential to the action or defense that judgment according to law and the very right of the cause cannot be given."

[4, 5] This declaration and the statement of the particulars of the claim clearly and sufficiently advised the defendant of the nature of the contractor's claim, and although it does not in specific terms charge fraud or bad faith on the part of the architects who were required by the contracts and specifications to approve the work, it does so in

substance for in both of the special counts it is alleged that "the plaintiff repeatedly called upon the said architects to issue to it a certificate for said work, which they had approved, but the said architects, without any just cause or right or excuse for so doing, wrongfully refused and failed to issue a certificate for said work" in accordance with the contracts; and further, that although the defendant took and accepted said work and has had the use and benefit thereof, "that the said architects have wrongfully and in gross disregard of the rights of the plaintiff refused to issue a certificate therefor." Actual fraud is not the only excuse which may be shown for failure to produce the architect's certificate, and it is well recognized that such a certificate is not necessary if it is capriciously or arbitrarily withheld. 6 R. C. L. 960; *Bush* v. *Jones*, 144 Fed. 942, 75 C. C. A. 582, note 6 L. R. A. (N. S.) 774; *Crouch* v. *Gutmann*, 134 N. Y. 45, 31 N. E. 271, 30 Am. St. Rep. 608, note; *Edwards* v. *Hartshorn*, 72 Kan. 19, 82 Pac. 520, note 1 L. R. A. (N. S.) 1051. If the refusal of the certificate is based upon false or fraudulent information, failure to produce it does not bar a recovery. *Richmond* v. *Burton*, 115 Va. 211, 78 S. E. 560. A general demurrer to such a declaration, under these conditions, should be overruled, and there is no merit in this assignment. *B. & O. R. Co.* v. *Laffertys*, 14 Gratt. (55 Va.) 478; *N. & W. Ry. Co.* v *Mills and Fairfax*, 91 Va. 641, 22 S. E. 556; *Cornell* v. *Steele*, 109 Va. 591, 64 S. E. 1038, 132 Am. St. Rep. 931; *Johnson* v. *Bunn*, 114 Va. 222, 76 S. E. 310; *Kistler* v. *Ind. & St. L. R. Co.*, 88 Ind. 460; *Maddux* v. *Buchanan*, 121 Va. 111, 92 S. E. 830.

[6, 7] 2. The second assignment of error arises thus: After all the evidence in chief had been introduced on both sides, and during the examination of the witnesses put on by the plaintiff in rebuttal, the defendant moved for leave to amend its special plea to set-off by inserting an averment of the plaintiff's insolvency, and stated to the court

that such amendment was desired for the purpose of introducing testimony to that effect, and recovering unliquidated damages as claimed in the plea; and then again, after all of the testimony had been concluded, the defendant moved for leave to amend its special plea of set-off by alleging that in the execution of contracts 1, 2 and 3, the plaintiff violated the contracts by doing its work under them in an unworkmanlike manner, and in disregard of the specifications accompanying such contracts and made a part thereof, which defective and faulty work the plaintiff covered up and concealed from view, whereby the defendant and its agents were misled, deceived and defrauded in making payments to the plaintiff company under said contracts, which payments the said company has not earned and should not have received. The court refused to allow either of these amendments, and this is alleged as error.

It is claimed that the act of March 27, 1914 (Acts 1914, p. 641), providing that "in any suit or action hereafter instituted, the court may at any time, in furtherance of justice, upon such terms as may be just, permit any proceeding or pleading to be amended, or material supplemental matter to be set forth in an amended or supplemental pleading. The court, at every stage of the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties," is clearly not permissive but mandatory, as to such amendments, and that the word "may" as first used in that statute should be construed as an imperative.

We cannot agree with this suggestion. It is true that the trial courts must always permit amendments in furtherance of justice, and upon refusal to do so such action may be reviewed by this court; but such amendments are not matters of right, and should not be permitted to delay, impede or embarrass the administration of justice. So far as the amendment to the special plea of set-off refers to

contract No. 2, it was clearly improper to admit it, because Contract No. 2 was an independent contract which had been fully and completely performed.   It is also observed in this connection that the special plea of set-off which had been filed in this case already alleged the defective and negligent construction of the work, as well as damages which could have been prevented by proper care, and claimed recoupment on account of the losses thereby caused. These allegations were sufficient to permit the plaintiff to prove all the damages alleged arising under the two contracts sued on.   No evidence was excluded, and the defendant was permitted fully to present the evidence to support its entire claim for damage and recoupment.   No reason is suggested or excuse given for not offering these amendments at an earlier stage of the trial, and there was no danger of loss under contract No. 2 (not here involved) because of the alleged insolvency of the contractor, for it appears that it had given bond in the penalty of $4,500 for the faithful performance of that contract.   The court correctly exercised its discretion in refusing to allow the pleas to be amended at that time.   The refusal to do so did not prejudice any substantial right of the defendant.

[8] 3. The third and fourth assignments of error may be considered together.   They are that the court erred in refusing to give the instructions offered by the petitioner, and in giving the instructions that were given.

These assignments raise substantially the same questions which were presented in various forms during the trial. The defendant claimed that it had the right to set-off and recover unliquidated damages, under Code section 3299, growing out of contract No. 2.   This contract had been fully performed and paid for before contract No. 3 had been let or commenced, and after the work done under contract No. 1 had been substantially performed.   This contract No. 2 (as has been previously stated) was in no

way dependent upon either of the other contracts, and had not been sued upon by the contractor, and this action was brought to recover balances alleged to be due under contracts No. 1 and No. 3. It is well settled in this State that the defendant cannot avail himself of set-off and counter claim under that section (3299), unless such claim grows out of the contract sued on. *Bunting* v. *Cochran,* 99 Va. 558, 30 S. E. 229; *American Manganese Co.* v. *Virginia Manganese Co.,* 91 Va. 281, 21 S. E. 466; *Newport News and Old Point Ry. and Elec. Co.* v. *Bickford,* 105 Va. 185, 52 S. E. 1011; *Leterman* v. *Charlottesville Lumber Co.,* 110 Va. 773, 67 S. E. 281; Burks' Pl. & Pr., 457. So that the trial court rightly directed the jury to disregard all evidence referring to contract No. 2 and instructed them to consider only the evidence relating to contracts No. 1 and No. 3.

[9] Then the defendant, all through the trial, claimed that because the contracts provided that Carneal & Johnston, engineers, were to be the sole arbitrators to decide all questions and disputes touching the proper construction and completion of the work, and contemplated and agreed that the decision of said engineers on all such points was to be final and conclusive, that they must abide by the decision of these engineers, etc., unless their decision was fraudulently made, or such a gross mistake had been made as necessarily to imply bad faith on their part, or plain failure to exercise an honest judgment; that therefore the contractor could not rely upon the evidence that Carneal & Johnston appointed an engineer, one Moore, as their assistant to superintend the work under the contracts; and that they did the work of construction under his direction and control. The specifications under contract. No. 1 expressly provided that Carneal & Jornston, in the performance of their duties under the contract, were to employ assistants, though this provision does not appear

in the specifications forming a part of contract No. 3. They had a very large amount of work on hand, and the language should be construed in a reasonable and practical way for the accomplishment of the manifest ends in view. Sewer pipes are laid from day to day, and if such work is to be properly inspected, it must be done daily or certainly before the ditches in which they are laid are covered. The contracts provide for partial payments to be made during the progress of the work for that already completed and tested. The specifications with contract No. 1 provided that such payments should be made for work "satisfactorily performed," and those with contract No. 3, when the piping had been "laid and tested." After such pipes are laid and covered, there is no practical way to inspect the work; so that there is the practical necessity that the architects or chief engineers employ assistants to inspect such work as it progresses, and, as stated, such partial payments could not be properly made except for construction properly executed. Such payments on these contracts were made, and the witness Moore, the assistant engineer employed by the architects for the purpose, testifies that he did his duty as he understood it. The defendant sought to have the court instruct the jury, in effect, that every part and parcel of the work of supervision committed to Carneal & Johnston should have been done by them personally. While it is true that upon the final arbitration they could only act in person, it cannot be true that under such contracts as these the architects or engineers cannot employ expert assistants to superintend and direct the construction in accordance with the contracts. Such work requires constant supervision and inspection during its progress, for it is soon concealed so as to make proper inspection thereafter impossible. There is no other practical method. This method was pursued under these contracts, and the payments here made were

upon certificates issued by Carneal & Johnston, based upon the reports of satisfactory work made to them by their assistant and superintendent, Moore, and the contractor and the defendant both acquiesced in this method of execution and settlement, and in this practical construction of the contracts by the engineers. If it be true that this was not authorized by the contracts, rightly construed, and that no such certificates should have been issued or payments made unless based upon the personal knowledge and inspection of Carneal & Johnston from day to day, or during construction, then this requirement has been waived, for it must have been known during the many months in which these pipes were being laid that these inspections and this supervision were not the personal work of the engineers, but of their assistant and representative, Moore.

We do not, of course, mean that any improper inspection, either by Carneal & Johnston or by their assistant, could relieve the contractor of the obligation of the contract, but only that Moore having acted as the representative of the architects, by their direction, and with the knowledge and acquiescence of the defendant, the contractor was justified in accepting Moore as the duly authorized representative of the architects during construction. Moore, it must be rememberel, never issued any certificates upon which the payments were based, nor did he ever undertake to approve the completed work.

The vital questions involved are questions of fact. The defendant claimed that the contractor had failed to perform its contract, and that the engineers refused and were justified in refusing to approve and accept the work; and the evidence in the record to sustain these views is most impressive. These claims of the defendant were fairly and sufficiently presented to the jury in the instructions, and they were told that if the work had not been done according to the required specifications and had not been accepted,

they should allow the defendant (by way of damage and recoupment) such sum as had been expended by it in repairing and relaying the sewer lines. If the jury had found in favor of the defendant, we would not have dis· turbed their verdict. The verdict, however, shows that they believed that the weight of the testimony was against these contentions of the defendant. While the grammatical construction of some of the instructions which were given is worthy of criticism, and there is some confusion, still, as a whole, they fairly presented the law of the case to the jury and there is no reason to doubt that they were fully understood.

[10] What we have said is sufficient to indicate our view as to the motion to set aside the verdict and grant a new trial upon the ground that it is contrary to the law and the evidence. It may be that this court has grave and reasonable doubts as to whether the jury have correctly interpreted conflicting parol evidence, but in a civil case this is insufficient; for in order to justify a reversal on that ground, the verdict must be plainly against the evidence, or without evidence to support it. This vexed controversy has been tried in the method provided by our system for the determination of such disputes, and we find no reversible error in the proceedings.

*Affirmed.*