908 F.2d 966
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
THE CONRAD COMPANY, INC., Plaintiff-Appellant,
v.
JESCO, INC., Federal Insurance Company of New Jersey,
Defendants-Appellees.
 No. 89-1726.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1990.
Decided July 12, 1990.
Rehearing Denied Aug. 28, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-87-201-R).
 Douglas George Eisele, Eisele & Ashburn, P.A., Statesville, N.C., for appellant.
 Jim Harold Guynn, Jr., Parvin, Wilson, Barnett & Hopper, P.C., Roanoke, Va., (argued), for appellees; Douglas D. Wilson, Parvin, Wilson, Barnett & Hopper, P.C., Roanoke, Va., on brief.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER and MURNAGHAN, Circuit Judges, and McMILLAN, Senior United States District Judge for the Western District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Conrad Co., Inc. ("Conrad"), as subcontractor, sued Jesco, Inc. ("Jesco"), a general contractor, for payment for work that the owner's architect found to be deficient. A jury found that the architect had rejected Conrad's work in bad faith and awarded Conrad damages. The district court granted a judgment notwithstanding the verdict because (a) there was insufficient evidence to support a finding of bad faith and (b) Jesco should not be held liable for decisions of the architect which are beyond the contractor's control.
 
 
 2
 On a close review of the record, we have concluded that because there was not sufficient evidence of bad faith, the judgment should be affirmed. With the case thus disposed of, it becomes unnecessary to decide whether, as a matter of law, even if there was evidence supporting the jury's conclusion, Jesco was, nevertheless, not liable to Conrad because Jesco exercised no control over the architect.
 
 I.
 
 3
 Involved is a construction project at the Occupational and Technical Building at New River Community College in Dublin, Virginia. Jesco was the general contractor on the project. Conrad was the subcontractor engaged to install laboratory equipment called "casework" or "LFE." The Commonwealth of Virginia was the project owner. Article 3 of the subcontract between Conrad and Jesco provided that "it is understood and agreed by and between the parties hereto, that the work included in this subcontract is to be done under the direction of [the owner's] Architect and Owner, and that his decisions as to the true construction and meanings of the plans and specifications shall be final." (Emphasis added.)
 
 
 4
 Conrad arranged to have the casework installed in what it considered to be a satisfactory manner. Before the work was completed, however, a state inspector, who was accompanied by the architect, observed, and expressed displeasure with, Conrad's work. The next day, the architect concluded that the casework did not comply with the contract specifications. Jesco initially agreed with Conrad and protested the architect's rejection. Jesco subsequently changed its mind and gave Conrad an opportunity to adjust the casework to the architect's satisfaction. Conrad did not do so. Jesco subsequently terminated the subcontract and hired another firm to construct the casework.
 
 
 5
 Under the subcontract, Jesco was to pay Conrad $60,945. Under the subcontract with Conrad's replacement, Jesco was to pay $80,560 for the same work that was to be performed under the Conrad subcontract. Jesco also incurred costs for removal and storage of the casework produced by Conrad that the architect had deemed deficient. Because Conrad had not performed in a manner satisfactory to the architect, Jesco never paid Conrad for its work.
 
 
 6
 Conrad brought suit in the United States District Court for the Western District of Virginia, praying for damages equal to the $60,945 contract price.[1] Jesco answered that it owed Conrad nothing because the architect had rejected Conrad's work. Jesco added a counterclaim for the additional costs associated with contracting with another firm to perform the work Conrad had performed.
 
 
 7
 Jesco followed its answer with a motion for partial summary judgment, arguing that the only issue of material fact was the extent of Jesco's damages on its counterclaim. Jesco argued that the subcontract provided that the architect's decision would be binding and that there was no dispute as to the fact that the architect had found Conrad's work unsatisfactory. The district court, however, denied the motion. The court agreed with Jesco that, under the subcontract, the architect's decision was to be binding. However, the court noted that, under Virginia law, an architect's decision "is subject to attack where there is a showing of fraud, bad faith, [the architect has] exceeded authority, or where the architect's decision is based on a mistake so gross that it amounts to fraud." The court consequently granted a pending motion made by Conrad, pursuant to Federal Rule of Civil Procedure 15, to amend its complaint to allege a mistake so gross that it amounted to fraud. The court concluded that Conrad was prepared to present enough evidence to create a genuine issue of material fact on the question of whether the architect's decision was based on a mistake so gross that it amounted to fraud.
 
 
 8
 The case proceeded to trial. After the court denied a motion for directed verdict brought by Jesco at the close of the evidence, it devised a special verdict form for the jury. The first question on the special verdict form asked whether the jury believed that the architect's decision was based on a mistake so gross that it amounted to fraud, was done in bad faith, or exceeded the architect's authority.[2] The first question informed the jury that it "may check one (1) or more of" the possibilities. The jury returned a verdict in Conrad's favor. Specifically, the jury found that the architect's decision was made in bad faith, although it did not find that the architect's decision was based on a mistake so gross as to constitute fraud or that the decision exceeded the architect's authority.
 
 
 9
 Upon Jesco's motion, the court granted Jesco judgment notwithstanding the verdict ("JNOV"). The court found that there was "not even a scintilla of evidence to support the jury finding of bad faith on the part of the architect." The court also held that Jesco was entitled to judgment on its counterclaim. The court thereupon awarded Jesco $25,894.02, a portion of which resulted from the costs of removing and storing Conrad's work.
 
 II.
 
 10
 There are two of the nine issues that Conrad raises which compel our attention. The first of these is whether the district court erred when it concluded that there was not enough evidence to support the jury's finding that the architect acted in bad faith. Since we conclude that the issue should be resolved in Jesco's favor, we do not reach the second issue, namely, whether the district court erred when it concluded that even assuming that there was evidence of bad faith supporting the jury's conclusion, Jesco was not liable to Conrad because Jesco exercised no control over the architect.[3]
 
 
 11
 In Crinkley v. Holiday Inns, Inc., 844 F.2d 156 (4th Cir.1988), we discussed the appropriate standard for review of a JNOV decision:
 
 
 12
 Under the federal standard, applied alike at trial and on review, the evidence and all reasonable inferences from it are assessed in the light most favorable to the non-moving party and the credibility of all evidence favoring the non-moving party is assumed. Assessed in this way, the evidence must then be "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party...." A "mere scintilla of evidence" is not sufficient to withstand the challenge.
 
 
 13
 Id. at 160 (citations omitted).
 
 
 14
 Conrad has pointed to four pieces of evidence from which the jury could have found bad faith by the architect. Conrad has noted that it presented evidence tending to show that (a) the specifications were proprietary,[4] (b) the architect did not make an independent judgment in that it accepted the judgment of the state building inspector, (c) Conrad's work in fact conformed to the specifications, and (d) the state building inspector who disapproved of Conrad's work had approved virtually identical work produced by Conrad for another project.
 
 
 15
 Yet the district court was correct in concluding that none of the evidence supported the jury's conclusion. As noted by the district court, "bad faith" generally means "not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive[--] ... not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Black's Law Dictionary 127 (5th ed. 1979). None of Conrad's evidence has sufficed to indicate an interested or sinister motive. Even if the specifications were proprietary, there was no evidence of bad faith such as the receiving of a kickback or a bribe. Further, the mere fact of agreement with the state inspector has not indicated an interested or sinister motive. The architect and the inspector could simply have evaluated the casework the same way. Also, the fact that the architect may have been wrong has not shown that the architect reached his allegedly incorrect decision in bad faith. Finally, the fact that similar work was approved on another project may show that the architect was wrong, but it does not show that he acted in bad faith. Thus, although Conrad presented evidence tending to show that the architect's assessment was erroneous, it failed to present evidence supporting a finding of bad faith. Accordingly, we have affirmed the district court's conclusion that there was insufficient evidence to support the jury's finding of bad faith and we, therefore, need not consider the legal implications of a finding of bad faith.
 
 III.
 
 16
 Conrad has advanced a series of additional claims. First, Conrad has argued that the provision in the subcontract that "the work included in this subcontract is to be done under the direction of said Architect and Owner, and that his decision as to the true construction and meanings of the plans and specifications shall be final," applies only to the interpretation of the specifications and not to determinations as to whether particular work satisfies the specifications. However, disputes over whether particular work satisfies the specifications are in effect disputes over interpretations of the specifications. Thus, the subcontract gave the architect the authority to determine whether Conrad's work was satisfactory.
 
 
 17
 Next, Conrad has argued that the district court should have instructed the jury that the architect's decision could also be the basis of liability if it was arbitrary and capricious. As correctly noted by the district court, the Virginia Supreme Court has held that an architect's decision need not be obeyed when the architect has exceeded its authority or when its decision is based on fraud or made in bad faith. See Main v. Dep't of Highways, 206 Va. 143, 142 S.E.2d 524 (1961). His decision also need not be obeyed if he has made a mistake so gross as to amount to fraud. See Johnston & Grommet Bros. v. Bunn & Monteiro, 114 Va. 222, 76 S.E. 310 (1912). Conrad has sought to rely upon Richmond College v. Scott-Nuckols Co., 98 S.E. 1, 124 Va. 333 (1919), as a basis for adding arbitrary and capricious to the list of bases for not deferring to an architect's decision. That case held only that an architect's failure to issue a certificate for work which it had already approved was arbitrary and capricious. Thus, that case did not address the scope of an architect's discretion in deciding whether to approve work. Moreover, even if the arbitrary and capricious standard did apply, Conrad has neither offered, nor shown that it possesses, evidence showing that the architect's decision was arbitrary and capricious.
 
 
 18
 Finally, Conrad has asserted that the district court erred in allowing on Jesco's counterclaim damages for the costs of storage of Conrad's casework. The district court relied upon Va.Code. Sec. 8.2-715 which entitles buyers to recover "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected." Conrad has offered no sufficient reason to disturb the district court's conclusion.
 
 Accordingly, the judgment is
 
 19
 AFFIRMED.
 
 WIDENER, Circuit Judge, dissenting:
 
 20
 I respectfully dissent.
 
 
 21
 I believe that the district court submitted the case to the jury on the correct theory in the first instance and that there was evidence to support the verdict.
 
 
 
 [1]
 Conrad's suit named both Jesco and Federal Insurance Company of New Jersey as surety of a payment bond
 
 
 [2]
 Conrad's amended pleading had not alleged bad faith or exceeding of the architect's authority. However, immediately after the jury charge, the court formally permitted Conrad to amend its pleading to include the bad faith and exceeding of authority claims
 
 
 [3]
 Our affirmance on the first ground also obviates the need for us to address Conrad's claim that Jesco did not preserve its right to make, at the JNOV stage, its argument as to the second ground
 
 
 [4]
 By alleging that the specifications were proprietary, Conrad has asserted that they violated Va.Code Secs. 11-35, 11-49, which provide that where brand names are used in a government bid invitation, any comparable brand is acceptable. Conrad's contention is that the architect was essentially rejecting comparable brands in violation of Virginia law