# Richmond.

## Arthur H. Bryant, Trading as Herbert Bryant's Son, v. John A. Fox's Administrator.

### March 15, 1923.

1. Streets and Highways—*Law of the Road—Collision Between Truck and Motorcycle Rider—Negligence of Truck Driver—Case at Bar*—In the instant case, an action arising out of a collision between a motor truck and a motorcycle, at the time of the collision, which occurred on a bridge, the truck was on its left-hand side of the roadway attempting to pass a horse and buggy. It appeared that it was possible for both the buggy and the truck to drive side by side on the northern or right-hand half of the bridge, and therefore in passing the buggy it was not necessary for the truck to go on its left-hand side of the bridge where the collision occurred. Defendant claimed that as the truck attempted to pass the buggy, an engine passing under the bridge emitted a cloud of smoke so dense as to obscure the vision of the driver of the truck. Under the evidence, however, the jury might have fairly concluded that there was nothing unusual about the smoke, and that it was not the proximate cause of the casualty. If the smoke was there before the driver of the truck began his effort to drive around the buggy, and he was unable to see through it, his negligence was manifest; while if it came up suddenly deceased had no opportunity to stop or reduce his speed.

   *Held:* That considering the evidence as a whole, there was evidence to justify the jury in concluding that, whether his vision was obscured or not, the negligence of the defendant's driver was manifest, because at the time of the accident his machine was being driven diagonally upon the south (his left) side of the road, when there was no necessity for occupying such a position in passing the buggy. .

2. Streets and Highways—*Collision Between Truck and Motorcycle Rider—Contributory Negligence of Motorcycle Rider—Question for Jury.*—In an action arising out of a collision between a motorcycle and a motor truck, where the negligence of the driver of the truck was manifest, the question of whether the motorcycle rider was guilty of contributory negligence, being a fairly debatable question, was for the jury. The motorcycle rider was on the part of the roadway which he had a right to believe was clear of vehicles approaching from the opposite

Syllabus.

direction, and, as the collision was sudden, the question as to whether the motorcycle rider was guilty of contributory negligence is one about which fair minded men may fairly differ.

3. APPEAL AND ERROR—*Conclusiveness of Verdict on Questions of Fact.*— Where the issue presented is an issue of fact, the conclusion of the jury thereon will not be disturbed on appeal, unless there be some reversible error in the procedure.

4. NEGLIGENCE—*Allegation of Negligence—Streets and Highways—Sufficiency of Allegation of Negligence in an Action for Death Arising Out of a Collision Between a Truck and a Motorcycle on a Bridge.*—In a notice of motion for judgment, the allegation of negligence read that the defendant's employee did negligently and recklessly run into and collide with plaintiff's decedent, who was riding a motorcycle on an overhead bridge on Washington street extended, near the city of Alexandria.

   *Held:* That since the Code of 1919, section 6118, this allegation of negligence is sufficient, as that section expressly prohibits a court from sustaining the demurrer "to a declaration alleging negligence of defendant because the particulars of the negligence are not stated, but such particulars may be demanded by the defendant under section six thousand and ninety-one."

5. STREETS AND HIGHWAYS—*Law of the Road—Keeping to the Right-Hand Side of the Road—Section 2143 of the Code of 1919—Case at Bar.*—Under section 2143 of the Code of 1919, it appears that a driver of a machine which approaches a place where the roadway is not plainly visible for 300 feet ahead, must at all times keep his machine on the right-hand side of the roadway, so as to allow ample room on the opposite side for the passage of other machines and vehicles, irrespective of whether another machine is approaching or not. In the instant case, an action for death of a motorcycle rider through collision with a truck, if the driver of the truck found himself in a position where he could not see plainly for a distance of 300 feet ahead, and he testified that he could not on account of smoke which enveloped him, then it was his duty to keep on the right-hand side of the roadway, and he should have ceased his effort to pass a buggy when his vision became obstructed.

6. STREETS AND HIGHWAYS—*Law of the Road—Keeping to the Right-Hand Side of the Road—Rules of the Road Promulgated by the Highway Commission—Case at Bar.*—In the instant case, an action for death of a motorcycle rider through collision with a motor truck on a bridge, the driver of the motor truck claimed that his vision had been obstructed by smoke from an engine passing under the bridge. There was evidence, however, which indicated that there was nothing unusual in the density of the smoke, and that it disappeared quickly. Under section (b) of the rule of the road promulgated by the Highway

Commission, if there was no serious obstruction of vision, then it is clear that upon meeting the motorcycle it was the duty of the driver of the truck to turn or keep to the right of the center of the highway, so as to pass without interference.   Under one view of the evidence, the defendant failed to do so, and, if this be true, such failure was a negligent violation of that rule.   Again, it was negligence and a violation of the rule for the truck driver to undertake to pass to the left of a buggy, if the way ahead was not clear of approaching traffic for 300 feet. · If the smoke did not obstruct his vision, the roadway was clear for 450 feet ahead of the truck driver, and the physical facts showed that the motorcycle must have been in view a sufficient time in advance of the collision to warn the truck driver against attempting to drive around a buggy.

7.   ERROR—*Harmless Error—What is Harmless Error.*—Error is harmless which does not injuriously affect the interests of the party complaining, and such injury is not presumed but must affirmatively appear from the record.

8.   APPEAL AND ERROR—*Harmless Error—Error Harmless Where Parties Had a Fair Trial—"Substantial Justice"—Section 6331 of the Code of 1919—Instructions.*—"Substantial Justice," as used in section 6331 o f the Code of 1919, providing that there shall be no reversal where it appears that "the parties have had a fair trial on the merits and substantial justice has been done," has been attained when litigants have had one fair trial on the merits, and although the language of instructions might be the subject of criticism, yet when the instructions read together fairly submitted the conflicting contentions of the parties arising under the evidence, there can be no reversal.

9.   ASSIGNMENT OF ERROR—*Necessity of Bill of Exceptions—Difference Between Judge and Attorney.*—Where there was a difference between the trial judge and the attorney for the defendant as to whether a view taken by the jury was had on motion of the plaintiff's attorney or without such motion, and as to certain occurrences during such view, there being no bill of exceptions showing such occurrences, an assignment of error based thereon will not be considered on appeal.

Error to a judgment of the Corporation Court of the city of Alexandria.   Judgment for plaintiff.   Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. K. M. Norton* and *Robert Thomas,* for the plaintiff in error.

*Charles Henry Smith,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

There was a collision between a motor truck owned by the plaintiff in error (hereinafter called the defendant), and a motorcycle driven by Fox, which resulted in his death. The defendant in error (hereinafter called the plaintiff) qualified as Fox's administrator and moved for judgment, alleging that the death of his intestate was due to the defendant's negligence.

Upon the first trial the jury failed to agree, but upon the second found a verdict for the plaintiff upon which the judgment here complained of was entered.

[1] One assignment is that the trial court erred in refusing to sustain a motion to set aside the verdict upon the ground that it was contrary to the law and the evidence and unsupported by the evidence.

The facts material for the consideration of this assignment, bearing in mind that the verdict has determined all the substantial conflicts in the testimony, are these:

The truck of the defendant was being driven westwardly over a bridge which crossed a number of railroad tracks, and in attempting to pass a horse and buggy being driven in the same direction, the driver changed the course of the machine by driving on the left of the vehicle in front of him, towards the south, and while the truck was thus on the southern side of the roadway, and within a distance variously estimated from four to eight feet from the southern edge of it, collided with a motorcycle which was being driven eastwardly by the plaintiff's intestate. The roadway of the bridge was twenty-eight feet six inches wide, was covered with planks laid diagonally, the ends of which joined in the center of the

roadway and thus clearly defined such center line. The buggy which was about five feet wide was close to the north side of the bridge. The truck was about six feet in width. It thus appears that it was possible for both of these vehicles to travel side by side upon the northern half of the bridge (which was fourteen feet three inches in width) and could travel in perfect safety by using two or three feet over the center of the roadway and towards the south side of it.

The defendant denied all negligence, claiming that as the driver of the truck attempted to pass the buggy just after he had swerved the machine to the left for this purpose, an engine drawing a train which was then passing under the bridge suddenly emitted a great cloud of smoke which was so dense as to obscure the vision, and that almost immediately after this the motorcycle was driven against the machine with great force because of the reckless speed at which it was moving.

There were several witnesses, who were within sight of the scene of the collision, who disagreed with the defendant's witnesses as to the density of this smoke cloud or screen, and their testimony indicated that there was nothing unusual in the density of the smoke upon the bridge and that it disappeared quickly. The outstanding fact upon which the jury doubtless based its conclusion was that the motor truck was on the southern half of the drive way traveling west, while it should have been as far to the right (north) as was reasonably practicable, while the motorcycle, traveling east, was well over upon the southern side of the roadway where it properly should have been.

[2] Much emphasis is placed by the attorney for the defendant upon the smoke screen, and while that circumstance is invoked as excusing the driver of the motor truck, he alludes to the same circumstance as a reason

for condemning the driver of the motorcycle. If the smoke arose suddenly (and the defense is based upon this view) then its suddenness obstructed the vision of the driver of the motorcycle as much as it obstructed the vision of the driver of the truck. Under the evidence, however, the jury might have fairly concluded that there was nothing unusual about the smoke, and that it was not the proximate cause of the casualty. If it was there before the driver of the truck began his effort to drive around the buggy and he was then unable to see through it, his negligence is manifest, while if it came up suddenly the deceased had no opportunity to stop or reduce his speed. Considering the evidence as a whole, there is evidence to justify the jury in concluding that whether his vision was obscured or not, the negligence of the defendant's driver is manifest because at the time of the accident his machine was being driven diagonally upon the south (his left) side of the road with its front wheel four, six, or at most eight feet distant therefrom when there was no necessity for occupying such a position in passing the buggy. This negligence being manifest, the resulting question is, whether the plaintiff's intestate was guilty of contributory negligence. This is a fairly debatable question. He was, however, on that part of the roadway which he had a right to believe was clear of vehicles approaching from the opposite direction, and as the evidence of the defendant shows that the collision was sudden and unanticipated, this question as to whether the deceased was guilty of contributory negligence is one about which fair minded men may fairly differ.

[3] These being the circumstances the issue presented is an issue of fact and therefore the conclusion of the jury will not be disturbed here unless there be some reversible error in the procedure.

[4] This leads us to consider some of the other errors which are assigned, among them the overruling of a demurrer to the notice of motion upon the ground that the negligence is insufficiently charged. The allegation in the notice reads, that the defendant's employee "did negligently and recklessly run into and collide with one John A. Fox, now deceased, who was riding a motorcycle on the overhead bridge on Washington street extended, near the city of Alexandria, Virginia, * *.''

However it may have been theretofore, since the Code of 1919 became effective such an allegation is sufficient, for the last clause of Code, section 6118, expressly prohibits a court from sustaining a demurrer "to a declaration alleging negligence of defendant because the particulars of the negligence are not stated, but such particulars may be demanded by the defendant under section six thousand and ninety-one." The note of the revisors is to the effect that this clause is new and purposely changed the former rule.

[5, 6] The defendant availed himself of his right to call for a bill of particulars. The plaintiff in response thereto alleged a violation of the rules of the road, promulgated by the Highway Commission, in that (1) "defendant's employee attempted to pass to the left of the horse and buggy in front of him, going in the same direction, at a time when the way ahead was not clear of approaching traffic, that is to say, for three hundred feet; and (2) at a time when the deceased, John A. Fox, was in the act of meeting and passing said horse and buggy."

He also alleged a violation of Code, section 2143, in that "defendant's employee drove his truck to the left of the roadway at a time when the roadway was not plainly visible for three hundred feet, without allowing ample room for the passage of the deceased's motorcycle."

We are urged, in the application of the evidence in this case to this bill of particulars, in view of this statute and the rule of the road relied on, to hold that the plaintiff has failed to show a case which entitles him to recover, and that the court should have so instructed the jury. This contention is pressed with great earnestness and is presented in varying forms.

Our conclusion is adverse to this contention. Applying Code, section 2143, to the evidence, it appears that a driver of a machine which approaches a place where the roadway is not plainly visible for three hundred feet ahead, must at all times keep his machine on the right-hand side of the roadway so as to allow ample room on the opposite side for the passage of other machines and vehicles irrespective of whether another machine is approaching or not. If the driver of the motor truck found himself in a position where he could not see plainly for a distance of three hundred feet ahead, and he says he could not when the smoke enveloped him, then it was his duty to keep on the right-hand side of the roadway so as to allow ample room on the opposite side for the passage of other vehicles and he should have ceased his effort to pass the buggy when his vision became thus obstructed. If, on the contrary, his vision was not obscured (andt here is much evidence to indicate that the smoke did not seriously obscure his vision) the rule of the road, section (b), applies to the case. That section reads:

"(b) All vehicles or implements, horse-drawn or otherwise, when being driven on the State highways, upon meeting others, shall turn to the right of the center of the highway so as to pass without interference, and in rounding corners or curves shall keep as far to the right of the road as is reasonably possible; and any vehicle overtaking another going in the same direction shall

pass to the left of the vehicle so overtaken, provided the way ahead is clear of approaching traffic.'' (This rule is promulgated by the State Highway Commission pursuant to authority conferred by statute.) If there was no serious obscuration of vision, then it is clear that upon meeting the motorcycle it was the duty of the driver of the truck to turn or keep to the right of the center of the highway so as to pass without interference. Under one view of the evidence the defendant failed to do so, and if this be true such failure was a negligent violation of that rule. Again, it was negligence and a violation of the rule for the truck driver to undertake to pass to the left of the buggy if the way ahead was not clear of approaching traffic for three hundred feet. Assuming that the smoke did not seriously obstruct the vision, the roadway was clear for four hundred and fifty feet ahead of the truck driver, and the physical facts show (notably the collision which came so quickly and while attempting to pass the buggy) that the motorcycle must have been in view a sufficient time in advance of the collision to warn the truck driver against attempting to drive around the buggy until after the motorcycle had passed.

[7, 8] Under the evidence in this case there is reason for a fair difference of opinion, but we find no reason for holding that the trial court erred in so instructing the jury as to leave them free to take either view of the testimony. We might find reason for criticising some of the language used, in some of the instructions, but no criticism can fairly be made which should lead to a reversal of the judgment upon any question of law which is presented. The instructions given at the instance of the defendant directed the attention of the jury to the evidence relied on to defeat the recovery, which if credited would have justified a favorable verdict. When all of the instructions are read together it appears that the

conflicting contentions of the parties arising under the evidence were fairly submitted. It is a case in which, in view of recent statutes, it is proper to repeat what was said in *Standard Paint Co.* v. *E. K. Vietor & Co.*, 120 Va. 610, 91 S. E. 752, 757, that "since the act of March 27, 1914, it is apparent that this court should extend the doctrine of harmless error to its logical conclusion, namely, that that error is harmless which does not injuriously affect the interests of the party complaining, and that such injury is not presumed but must affirmatively appear from the record; for that act, in simple and unambiguous language, directs the courts, at every stage of the proceedings, to disregard any error or defect in the proceedings which does not affect the substantial rights of the parties."

Following that, this language of Kelly, P., in *Va. Ry. & Power Co.* v. *Smith*, 129 Va. 269, 105 S. E. 532, 535, referring to the present statute, is applicable: "The revisors, in section 6331 of the Code of 1919, in keeping with the modern trend of legislative and judicial policy, added a new clause to the old section (Code 1887, section 3449); and the statute now provides that 'no judgment or decree shall be reversed   *   *   for any error committed on the trial where it plainly appears from the record and from the evidence given at the trial that the parties have had a fair trial on the merits, and substantial justice has been done.' It is our purpose to vitalize this provision in its application and administration. Of course, there will always be room for doubt as to whether the right result has been reached when the evidence has been in serious conflict; but in causes triable and tried by juries 'substantial justice' in a legal sense has been attained when litigants have had one fair trial on the merits;   *   *."

[9] The record presents this deplorable fact, that the

learned attorney for the defendant and the trial judge differed as to whether a view which was taken by the jury was had on motion of the plaintiff's attorney or without such motion; and as to certain occurrences during such view. He sought to have his version thereof certified by the judge in a bill of exceptions. This was refused and the issue was presented to this court in a petition for mandamus to require the judge to sign the certificate presented. On that hearing the mandamus was refused. There being no bill of exceptions showing such occurrences, this assignment will not be further considered.

For the reasons indicated the judgment will be affirmed.

*Affirmed.*