# Staunton

JOHN M. ROPP v. MARGARET R. STEVENS, WHO SUES BY NEXT FRIEND.

September 18, 1930.

Absent, Holt and Gregory, JJ.

*R. K. Spiller, A. B. Hunt* and *Henson & Henson,* for the plaintiff in error.

*Dillard, Moomaw & Dillard,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

Dr. John M. Ropp complains of a judgment against him in favor of Margaret R. Stevens, a young married woman, for $3,500. The motion is based upon the alleged negligence of the physician when forcibly delivering her of her second child, and in failing to give her proper surgical or medical attention thereafter.

One of the assignments of error is that the trial court should have sustained the motion to set aside the verdict as contrary to the law and the evidence.

According to the physician's testimony, he did everything which could or should have been properly done before, at the time of, and after her *accouchement.* Had there been no conflict, or had the jury fully credited this testimony, they would have found a verdict for the defendant.

Anticipating her confinement, the plaintiff engaged the services of the physician in June. There is a conflict in the evidence as to whether he paid her any attention between that time and the date when the child was delivered, October 27, 1926. She testified that the birth of the child was anticipated about that time, but that she had no labor pains whatever and did not send for the doctor; but there is evidence sufficient to show that he was called by one of her neighbors or friends. She testified that on his first visit on that date he made a physical examination, inserted some sort of an instrument which pained her greatly; that he told her something was not right; and that after he left she bled continuously until 4 o'clock, when she had the physician called again, and that he came about 6:30. He administered chloroform before the delivery, and at the time of the delivery she was unconscious.

The physician claims that the child was misplaced in the womb, and that the dilation presented its shoulder. This necessitated entering the cervix with his fingers or hand, changing the position of the child while in the womb, and forcibly delivering the child feet foremost. This operation is described as the "podalic version." He came to see her three or four successive days immediately after the birth, and claims that he told her to come to see him within six weeks or two months thereafter for further examination, but that she did not do so. She denies that she had any such instructions, though it seems to be shown that this is the approved and better practice by physicians in the city of Roanoke in such cases.

According to her testimony, speaking generally, she had previously given birth to a child and immediately after her confinement recovered promptly, and was in excellent health, but after this forcible delivery of her second child she was weak, in poor health, had bearing-down pains, had chills and fever, as she says, for several days after the birth, did not regain her health, became ill, nervous, suffered pain, growing worse and worse until she became practically an invalid. Then she went to other physicians. They made a careful examination, found that there had been lacerations and a relaxation of the perineum; that the cervix had been badly torn throughout its length on one side into the fornix and for three-fourths of an inch on the other side; that her womb had fallen, which accounted for her nervousness and pain in the abdomen; and that there was pus in the ovarian tubes. After these lacerations were repaired, the adhesions corrected and the ovarian tubes removed (which produced sterility) she recovered her health. It is shown by the testimony of the physician who attended her at the birth of her first child that there were no such lacerations and injuries after that birth.

It follows from what we have said that there is evidence to support the conclusion of the jury that injuries

resulted from the forcible removal of her second child from her by the defendant physician, and that she had not been given proper medical and surgical attention thereafter.

There were several conflicts in the testimony, but taking the expert medical testimony alone, both that introduced for the plaintiff and that for the defendant, there is ample evidence to support the conclusion of the jury that her injuries and subsequent ill health were caused by the negligence of the defendant.

This court and other courts have gone and will go far to support the rule that physicians do not and cannot guarantee successful results, and only owe their patients ordinary but expert care, attention and skill such as is usually exercised by reputable physicians in similar cases; and that they can be held responsible only in case their patients suffer because of their negligence. A patient may not recover damages simply because he does not get well, and where actionable negligence is alleged against a physician it must be established by the evidence.

Under our system, questions of fact, such as were presented by the issues here raised, must be submitted to a jury, whose verdict is conclusive if fairly supported by the evidence.

There was no error in refusing to set aside the verdict of the jury.

Complaint is made of the instructions, but we find nothing in them which justifies a reversal. The jury were clearly told that in such cases the physician in charge impliedly contracts that he has the knowledge and skill for the treatment of the case in hand possessed by the average of the members of the profession in good standing in the locality, regard being had to the state of the medical profession at the time, and also that if he has not such knowledge or skill, or fails to exercise such ordinary skill of his profession in the treatment of the case, then only is the physician liable for such injury as may result proximately

from his treatment. The other instructions given for the plaintiff only directed the attention of the jury more particularly to the evidence relied upon to support the charges of negligence.

For the defendant the court gave seven instructions, directing attention to and emphasizing the testimony relied upon by the defendant—specifically, that before the plaintiff could recover they must believe from the evidence that the injuries complained of were the direct and proximate result of the negligence and lack of skill of the defendant while he was attending the plaintiff professionally; and explicitly that the mere presence of lacerations and the infection of the ovarian tubes did not alone entitle the plaintiff to recover, but that she could not recover unless it was shown by a preponderance of the evidence that the injuries were caused by the negligence of the defendant, or his lack of skill and diligence in the performance of his duties as the attending physician. They were also definitely instructed as to every specific defense made by the defendant as to which there was any supporting evidence.

Another error assigned is that the court erred in permitting an amendment to be made to the notice of motion after the evidence was in, alleging injury to the perineum, over the objection of the defendant, without at the same time permitting a juror to be withdrawn and continuing the case on the motion of the defendant, so that he might be prepared to meet the amendment on the question of laceration of the perineum.

There are several cases construing Code, section 6104, as to amendments.

This is said in *Watson* v. *Brunner*, 128 Va. 600, 105 S. E. 97, 99: "No fixed and invariable rule has ever been formulated, and in the nature of things, since the exercise of the court's discretion in each case rests upon the facts of that case, it follows that such a rule is incapable of establishment, but the general tendency is in the direction of

increasing liberality in respect of allowing amendments, thereby enlarging the flexibility of judicial procedure to the end that substantial justice, unembarrassed by technical niceties and meticulous refinements, may be readily afforded. This tendency is indicated by section 6104 of the Code of 1919, which provides that 'in any suit, action, motion or other proceeding, hereafter instituted, the court may at any time, in furtherance of justice and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter to be set forth, in amended or supplemental pleadings * *.' This court has declared in *Standard Paint Company* v. *Vietor*, 120 Va. 595, 91 S. E. 752, that this section should be liberally construed, and in *Tidball* v. *Shenandoah National Bank*, 100 Va. 744, 42 S. E. 868, 'that the rule as to amendments is not less liberal in equity than in law.' "

In *Carpenter* v. *Meredith*, 122 Va. 446, 96 S. E. 635, 636, this is said: "It is the settled policy of our law to allow amendments in pleading and to disregard defects in procedure which do not operate to the prejudice of the substantial rights of the opposite party."

In *Du Pont De Nemours & Co.* v. *Snead*, 124 Va. 177, 97 S. E. 812, 814, this is said: "Amendments are freely allowed and are to be favored when they promote the ends of justice. It would be a reproach to the administration of justice to permit a substantial right to be sacrificed to mere form which did not affect the rights of the parties, or a mode of procedure which could be readily changed without injury or injustice to anyone. The ends of justice should never be sacrificed to mere form or to too rigid adherence to rules of practice."

And this in *Richmond College* v. *Scott-Nuckols Co.*, 124 Va. 333, 98 S. E. 1, 3: "The trial courts must always permit amendments in furtherance of justice and upon refusal to do so such action may be reviewed by this court; but such amendments are not matters of right and should not

be permitted to delay, impede, or embarrass the administration of justice."

Other pertinent cases are, *Bryant* v. *Fox*, 135 Va. 302, 116 S. E. 459; *Transit Corp.* v. *Four Wheel Drive Auto Co.*, 151 Va. 865, 145 S. E. 331.

■ In this case the evidence as to the injury to the perineum had already been submitted to the jury, and the witnesses on both sides fully examined as to this injury. The amendment was hardly necessary, and certainly did not take the defendant by surprise. We think the original notice was amply sufficient to permit the introduction of this testimony without the amendment. Among other things, the notice alleged that the defendant "in so delivering said child on said day was guilty of negligence and did not exercise the care and skill claimed by said defendant to possess, but performed his services in such unlawful and negligent manner in delivering said child that he tore and lacerated the womb and appurtenant parts of same severely and to a much greater extent than was necessary and usual in cases of that kind;" and that "said defendant was guilty of gross neglect of plaintiff after his negligent acts described above, and with knowledge of said lacerations of her womb, left plaintiff in said condition without any knowledge on her part of such condition."

The perineum is: (1) "The region of the body between the genital organs and the rectum;" (2) "The entire region at the outlet of the pelvis." Standard Dictionary. So that, having charged the negligence of the physician in the forcible delivery of her child, and that the womb and appurtenant parts were lacerated, the injury to the perineum had already been sufficiently alleged; and had the defendant desired further details, they might have been obtained by bill of particulars.

We find no sufficient reason for disturbing the verdict.

*Affirmed.*