UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys,[*] Friedman and White
Argued at Christiansburg, Virginia


TAMMY WOLLAM, ADMINISTRATOR OF
 THE ESTATE OF DOUGLAS ALLEN HICKS, SR.

                                              MEMORANDUM OPINION[**] BY
v.       Record No. 0483-23-3          JUDGE KIMBERLEY SLAYTON WHITE
                                                    MARCH 26, 2024

ACV, INC.


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

E. Kyle McNew (M. Bryan Slaughter; Les S. Bowers; Christina R.
Dimeo; MichieHamlett, PLLC, on briefs), for appellant.

Carlyle R. Wimbish, III (Bradley D. Reeser; Wimbish Gentile
McCray & Roeber, PLLC, on brief), for appellee.


Tammy Wollam appeals the trial court's giving of a jury instruction proposed by ACV,

claiming it does not properly reflect Virginia law and is argumentative and misleading. She

argues that a newly approved, but not yet published, revised version of the model jury instruction

should have been used instead. Whether the trial court's jury instructions were proper are

viewed under an abuse of discretion standard. For the following reasons, we affirm the trial

court's ruling.

---

[*] Judge Humphreys participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2023.
.

[**] This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND

Beginning in 2016, Mr. Hicks received care for an infection. Eventually, Mr. Hicks's symptoms progressed to the point where he was checked into Carilion Roanoke Memorial Hospital emergency room. Mr. Hicks's symptoms included difficulty breathing due to a mass in his neck that was causing his airway to be pushed to the side and compressed. Dr. Bernier, the original examining physician, stated that she could see the neck mass increasing each time she examined him. Dr. Bernier did not secure Mr. Hicks's airway nor do anything to stop the growth of the mass. Dr. Boring, the second examining physician, also observed a large mass, and therefore ordered a CT scan. Dr. Boring also ordered a "difficult airway" cart to be placed near him in the ICU.

Dr. Shafer was the anesthesiologist on call at the time and date when Hicks was admitted to the ICU. Dr. Shafer was called in to consult once the CT scan confirmed the mass on Hicks's neck. Dr. Shafer performed an examination on Hicks and determined he needed an urgent intubation to secure his airway.

Despite examining Mr. Hicks, Dr. Shafer was unaware that he presented a "difficult airway." Others knew of the neck mass, but Dr. Shafer stated that he did not and, therefore, never considered an awake intubation. Because Mr. Hicks had a "difficult airway," if the process of intubation took too long, the doctors ran the risk of the patient not being able to breathe while under anesthesia.

Dr. Shafer attempted multiple times unsuccessfully to do a normal intubation. A surgical team then had to do an emergency tracheostomy. This procedure, as a whole, took longer than expected and resulted in significant blood loss and trauma to the throat. Several hours after the surgical airway was placed, Mr. Hicks experienced a series of cardiac arrests. Mr. Hicks passed away in the hospital seven days after the surgery.

Tammy Wollam, Administrator of the Estate of Douglas Allen Hicks, Sr., (Wollam) filed an amended wrongful death complaint against Dr. Shafer and his employer, ACV, Inc. (ACV). Wollam alleged one count of negligence, arguing that Hicks's "death was avoidable and would have been avoided if the defendants had complied with the applicable standard of care" and that "[t]he defendants, either directly or by and through the employees, agents, servants, partners, and/or joint venturers, breached the standard of care and were medically negligent in their care and treatment of" Hicks.[1]

Before the scheduled jury trial, the parties submitted proposed jury instructions. Relevant to this appeal, ACV proposed a jury instruction that stated "[t]he fact that Dr. Shafer was unable to successfully intubate Mr. Hicks does not, by itself, establish a breach of the standard of care or entitle [the estate] to recover in this case." (Proposed Instruction 9). For this instruction, ACV cited Virginia Model Jury Instructions ("VMJI"), Civil Instruction Nos. 4.015 and 35.040. This instruction often is referred to as the "Unsuccessful Outcome" instruction." Wollam requested the circuit court instead instruct the jury that "[t]he mere fact that Mr. Hicks died does not mean that [ACV] was negligent. However, you may consider Mr. Hicks's outcome, along with the other evidence, in determining whether the defendant was negligent." (Proposed Instruction G).

The parties convened for trial. At the close of evidence, the circuit court heard argument on the parties' objections to the jury instructions. Wollam argued that Proposed Instruction 9 was "essentially an instruction that the VMJI and numerous Virginia Supreme Court justices have recognized is tilted toward the defense, unfairly so." Wollam argued that a new version of

---

[1] Connie Hicks, who was at the time the administrator of the estate of Douglas Hicks, her late husband, initially filed the complaint and named Carol Bernier, D.O., Jonathan M. Boring, D.O., and their employer, Carilion Clinic ("Carilion") as defendants. The circuit court later substituted Wollam, Hicks's daughter, as the plaintiff. After filing the original complaint, Wollam non-suited the case against Drs. Bernier, Boring, and Shafer, and settled the case with Carilion.

VMJI No. 35.040 shifts towards "equitableness" and "fairness."[2] Wollam alleged that "a jury instruction saying that the fact of being unable to intubate doesn't establish a breach of the standard of care, that directly comments on [ACV's] theory of the case and endorse[d] it." ACV responded that Proposed Instruction 9 was "an appropriate instruction based on the evidence in this case." ACV stated that the circuit court provided the instruction during a trial in the previous year.

The circuit court refused Proposed Instruction G. The circuit court accepted Proposed Instruction 9 and instructed the jury that "[t]he fact that Dr. Shafer was unable to successfully intubate Mr. Hicks does not, by itself, establish a breach of the standard of care or entitle the Plaintiff to recover in this case." (Jury Instruction 9). After receiving all of the instructions of the circuit court and hearing the closing arguments of counsel, the jury returned a verdict in ACV's favor. The circuit court entered judgment on the verdict on February 23, 2023.

On appeal, Wollam argues that the circuit court committed reversible error by giving Jury Instruction 9. Wollam alleges that Jury Instruction 9 "spoke only in the negative, of what does not establish negligence," and that the circuit court "must balance that by identifying what can prove negligence and by contextualizing how the outcome may be considered in determining negligence." Wollam contends that the new version of VMJI No. 35.040 "provides the necessary balance by speaking first in the negative of what mere fact does not establish negligence and then speaking in the positive of how that fact can still play into the negligence determination." Wollam claims that Jury Instruction 9, "took all of the deficiencies of the old model and then added the fundamental errors of isolating part of the evidence, contradicting other evidence, and adding argumentative language at the end." Specifically, Wollam argues

_____

[2] At the time of trial, VMJI No. 35.040 had been revised by the Model Jury Instruction Committee, but it had not yet been published.

that the circuit court erred in informing the jury "that the unsuccessful intubation was not evidence of negligence." Wollam concludes that the circuit court should have informed the jury of the "general, neutral principles," and should have left it to "the parties to argue how to reconcile conflicting evidence and how to apply the neutral principles to the evidence."

ANALYSIS

Properly instructing the jury "rest[s] within the sound discretion of the trial court." *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009). The sole purpose of appellate review of jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Dorman v. State Indus., Inc.*, 292 Va. 111, 125 (2016). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022). "Whether a proffered jury instruction accurately states the law, however, is reviewed de novo." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022). "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Cooper*, 277 Va. at 381.

The use of the "Unsuccessful Outcome" instruction has been prevalent in Virginia for over 100 years and was only changed within the past year. The previous wording of the "Unsuccessful Outcome" instruction was, "The fact that a doctor's efforts on behalf of his patient were unsuccessful does not, by itself, establish negligence." Virginia Model Jury Instrs.—Civil, No. 35.040, Mathew Bender & Co. (2021-22 ed.). This was recently replaced in the model instructions with, "The mere fact that a plaintiff [was not cured; was injured; had a bad result] does not mean that the defendant was negligent. However, you may consider the plaintiff's outcome, along with the other evidence, in determining whether the defendant was

negligent." Virginia Model Jury Instrs.—Civil No. 35.040, Mathew Bender & Co. (2022-23 ed.).

VMJI No. 35.040 traces its roots in Virginia law back to *Hunter v. Burroughs*, 123 Va. 113 (1918), from 1918. There, the Supreme Court affirmed the giving of a jury instruction that read

> [t]he court instructs the jury that the fact that after the plaintiff was treated with the X-ray by the defendant ulcers appeared on his legs does not of itself alone entitle the plaintiff to recover; and the jury are instructed that they shall find for the defendant unless the plaintiff has shown by a preponderance of the evidence that the ulcers were caused by the negligence of the defendant, or his lack of skill, or his failure to apply the same.

*Id.* at 126. Many cases followed *Hunter* and provided the language used in the model jury instruction. *See Fox v. Mason*, 139 Va. 667 (1924); *Ropp v. Stevens*, 155 Va. 304 (1930); *Reed v. Church*, 175 Va. 284 (1940); *Carroll v. Richardson*, 201 Va. 157 (1959); *Easterling v. Walton*, 208 Va. 214 (1967).

In the mid-eighties, the Supreme Court held that "[a] physician is not an insurer of the success of his diagnosis and treatment . . . . The mere fact that he has failed to effect a cure or that his diagnosis and treatment have been detrimental to the patient's health does not raise a presumption of negligence." *Brown v. Koulizakis*, 229 Va. 524, 532 (1985). Most recently, in 2017, the Supreme Court issued an unpublished opinion approving the use of a jury instruction based on VMJI No. 35.040.[3] Citing to *Brown*, the Court stated that VMJI No. 35.040 "derives its language from the holdings of several of this Court's opinions." *Chapple-Brooks v. Nguyen*, No. 161812, 2017 Va. Unpub. LEXIS 35, at *9 (Dec. 28, 2017). The Court stated further that

---

[3] Unpublished opinions have no precedential value and serve only as persuasive authority for this Court.

- 6 -

the instruction "was not argumentative and did not have the tendency to mislead or confuse the jury." *Id.*

The first issue to address is in this case is whether Instruction No. 9 is a correct statement of Virginia law. Appellate review of jury instructions is focused on ensuring "that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Dorman*, 292 Va. at 125 (quoting *Cain v. Lee*, 290 Va. 129, 134 (2015)). While Wollam cites to cases from other jurisdictions approving the giving of a different instruction, she does not cite to any case overruling or limiting the long line of cases stemming from *Hunter*. This Court cannot ignore the century of law from which VMJI No. 35.040 is derived. Our de novo review requires us to find that Instruction No. 9 is a correct statement of Virginia law.

We next turn to Wollam's arguments that the proposed instruction was misleading and argumentative. Wollam asserts that the instruction misleads the jury and argues that Virginia law has recognized the dangers in instructions that "single out for emphasis a part of the evidence." *Keefer v. Commonwealth*, 56 Va. App. 520, 524 (2010) (quoting *Woods v. Commonwealth*, 171 Va. 543, 548 (1938)). Wollam argues that the instruction only highlights the inability of Dr. Shafer to intubate Mr. Hicks and fails to address the failure by Dr. Shafer to take a proper physical examination. Wollam also argues that Instruction No. 9 tells the jury that failed intubation is not evidence of negligence.

However, the changes from VMJI No. 35.040 to Instruction No. 9 are more similar to case specifications permitted by Virginia law. Code § 8.01-379.2 states that "[a] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with the model jury instructions." Below are the two instructions.

- 7 -

"The fact that a doctor's efforts on behalf of his patient were unsuccessful does not, by itself, establish negligence." (35.040).

"Instruction nine, the fact that Dr. Shafer was unable to successfully intubate Mr. Hicks does not, by itself, establish a breach of the standard of care or entitle the Plaintiff to recover in this case." (Instruction No. 9).

The differences include inputting Dr. Shafer's name, adding the effort that failed, changing negligence to "breach of standard of care," and adding that this alone doesn't allow plaintiff to recover. The minor modifications that tailored the instruction to the individual physician, patient, and procedure at issue did not render it inappropriate. Further, and in response to Wollam's argument that the trial court "erred in informing the jury 'that the unsuccessful intubation was not evidence of negligence,'" the instruction was clear that the unsuccessful outcome did not *by itself* establish negligence—a correct statement of the law. As shown, the instruction was supported by the law and the evidence, meaning these small changes are insufficient to justify a finding of abuse of discretion by the lower court.

Wollam's third criticism of Instruction No. 9 is that the addition of the phrase "or entitle the Plaintiff to recover in this case," renders the instruction "unduly argumentative and misleading." This argument is undermined by the fact that the Supreme Court of Virginia specifically approved this language used in VMJI Civil No. 4.015 (Lexis 2020-2021 ed.), in *Edlow v. Arnold*, 243 Va. 345, 349-50 (1992). The instruction approved in *Edlow* stated in relevant part: "The Court instructs the jury that the fact that there was an accident and that the plaintiff may have been injured does not, of itself, entitle the plaintiff to recover." *Id.* at 349.

> It is a fair statement of the rule that, in order to recover for a negligent tort, a plaintiff must prove by a preponderance of the evidence that the defendant was guilty of some act or omission which constituted a want of due care under the circumstances disclosed by the evidence.

*Id.* at 350.  It follows that if the evidence did not show a breach of a standard of care, then Wollam would not be able to recover from ACV.  Including that language in Instruction No. 9 was not an abuse of discretion by the lower court.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*